IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 12-cv-02023-LTB

IN RE:

MARLENE M. MOOSMAN,

    Debtor.


ROBERTSON B. COHEN,

    Plaintiff-Appellee,

v.

MARLENE M. MOOSMAN,

    Defendant-Appellant.
_____

ORDER
_____

Appellant, Debtor Marlene M. Moosman, appeals an order of the United States Bankruptcy Court for the District of Colorado dated July 5, 2012, denying her Motion for Summary Judgment and granting the Motion for Summary Judgment filed by the Appellee, Chapter 7 Trustee Robertson B. Cohen. [Appellate Record ("AR") at Doc #12-1, 32]. Oral argument would not materially assist in the determination of this appeal. After consideration of the record and the parties' briefs, and for the reasons set forth below, I affirm the order of the Bankruptcy Court.

## I. Facts

The underlying facts in this case are undisputed. On August 31, 2010, Debtor filed a voluntary petition for relief under Chapter 7, Title 11, of the United States Bankruptcy Code.

[AR Doc. # 12-3, 6-8]. On her Schedule B list of personal property, Debtor listed a Prudential Insurance Company of America ("Prudential") whole life insurance policy ("Policy") valued at $6,250.00. [*Id*. at 18].

Debtor's Policy provides that "Tabular [Cash] Value" is the value of the Policy "if all due premiums have been paid, there is no contract debt, and there are no dividend credits." [*Id.* at 125]. In other words, "the increase in tabular cash value is the result of premium payments and dividends do not factor into increases in the tabular cash value." [*Id.* at 154]. "Net Cash Surrender Value" is cash value of the Policy that is obtained by subtracting the amounts due on loans from "Total Cash Surrender Value." [*Id*. at 125] (providing that the policy holder may "surrender this contract for its net cash value," and providing the methods of calculation). The "Total Cash Surrender Value" is determined by adding the "Tabular Cash Value" to "Termination Dividends," "Cash Value PUAs" (Paid-Up Additions), and other returns. [*Id.* at 156, 158]. A "Termination Dividend" is an extra dividend paid upon the termination of the policy, and "Cash Value PUAs" are the credits for annual dividends paid on the anniversary of the Policy and are treated as life insurance additions paid-up on an insured's life. [*Id*. at 123, 181].

Forty-eight months prior to Debtor's petition date, August 31, 2006, the Policy's Tabular Cash Value was $4,617. [*Id*. at 156, 158]. On the petition date, August 31, 2010, the Policy's Tabular Cash Value was $6,495.75. [*Id.* at 158]. Thus, in the forty-eight month period before Debtor's petition date the Policy's Tabular Cash Value had increased $1,878.75. Additionally, the Total Cash Surrender Value of the Policy on August 31, 2006, was $7,841.23, and was $7,615.71 on August 31, 2010. [*Id.* at 156, 158]. Thus, as of Debtor's August 31, 2010 petition date, taking into account the Debtor's outstanding loans of $6,155.92 against the Policy, the

Policy's Net Cash Surrender Value was $1,459.79. [*Id.* at 158].

Debtor's Schedule C claimed an exemption for the value of the Policy under Colo. Rev. Stat. ("C.R.S.") § 13-54-102(1)(l)(A) (2010). [*Id.* at 21]. The Trustee, also citing to C.R.S. § 13-54-102(1)(l)(A), objected to the exemption of the Policy. [*Id.* at 56-57].

On May 4, 2011, the Bankruptcy Court denied Debtor's claimed exemption on the Prudential Policy. [*Id.* at 61]. The Trustee then commenced an adversary proceeding against Prudential seeking turnover of the non-exempt cash value of the Policy. [*Id.* at 64]. Debtor sought, and was permitted to intervene, essentially arguing that there were no increases in the cash value on the Policy during the forty-eight months prior to her petition. [*Id.* a 12-1, 15-16]. Debtor filed a Motion for Summary Judgment on March 16, 2012, essentially arguing that because the "Net Cash Surrender Value" of the Policy had decreased from $7,841.23 to $1,459.79, there was not any non-exempt increases in the Policy's value for the Trustee to recover. [*Id.* at 87-88].

The Trustee then filed a Cross-Motion for Summary Judgment and Response to Debtor's Motion for Summary Judgment, arguing that while C.R.S. § 13-54-102(1)(l)(A) does provide an exemption for the cash surrender value of a life insurance policy, the statute also provides for an exclusion from the exemption for increases in cash value from contributions (i.e. premium payments) made by the Debtor during the forty-eight month period prior to bankruptcy, per *In re Marriage of Gedgaudas*, 978 P.2d 677 (Colo. App. 1999). [*Id.* at 107-15]. The Trustee contended that, according to the Policy's definitions and Prudential's discovery responses, Debtor's "Tabular Cash Value" reflected the effect of Debtor's contributions through premium payments (*i.e.* the cash value in C.R.S. § 13-54-102(1)(l)(A)). [*Id.*] In the forty-eight months

prior to bankruptcy, the Trustee argued, this amount had increased by $1,878.75, all of which was non-exempt. [*Id.*] However, because the Policy's "Net Cash Surrender Value" on the petition date was less than $1,878.75, the Trustee argued that the entire "Net Cash Surrender Value" of $1,459.79 was non-exempt. [*Id.*]

On July 5, 2012, the Bankruptcy Court granted Trustee's summary judgment motion. *In re Moosman*, 473 B.R. 385 (Bankr. D. Colo., July 5, 2012). The Court explained that the language of C.R.S. § 13-54-102(1)(l)(A) prescribes different measures for the exemption and the exclusion from the exemption. *In re Moosman*, 473 B.R. at 390. The Court found Debtor's argument that she is entitled to summary judgment because the "Net Cash Surrender Value" of the Policy declined in the forty-eight months prior to her bankruptcy contrary to the language of the statute and the holding in *Gedgaudas*. 978 P.2d at 667. *Id.* Thus, the Court declared the entire Net Cash Surrender Value of Debtor's Policy non-exempt and ordered Prudential to turn the entire amount over to the Trustee. *Id*. at 392.

Debtor appealed the decision to the Bankruptcy Appellate Panel. [Doc. # 3]. On August 2, 2012, Trustee elected to remove the appeal to the District Court pursuant to 28 U.S.C. §§ 158(a), 158(c)(1)(B). [Doc. # 4].

## II. Standard of Review

In reviewing a Bankruptcy Court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the Bankruptcy Court's ruling. 28 U.S.C. §158(a); Fed. R. Bankr. P. 8013. As relevant here, a Bankruptcy Court's legal conclusions – as opposed to its factual findings – are reviewed *de novo*. *In re Warren*, 512 F.3d 1241, 1248 (10th Cir. 2008); *In re D.E. Frey Group, Inc.,* 2008 WL 630044, 2 (D. Colo. 2008).

### III. Analysis

The legal issue here is whether the Bankruptcy Court's interpretation and application of C.R.S. § 13-54-102(1)(l)(A) was proper.

On appeal Debtor essentially makes two arguments: (1) that C.R.S. § 13-54-102(1)(l)(A) is ambiguous, that the reasoning in *Gedgaudas* was improperly applied, and that the Bankruptcy Court erred in ordering Prudential to turnover the $1,459.79 petition date Net Cash Surrender Value of the Debtor's Policy because the $1,878.75 forty-eight month increase of Tabular Cash Value of the insurance policy exceeded the petition date Net Cash Surrender Value [Doc. # 15]; and (2) that the Bankruptcy Court's order and the statute improperly impair the contractual obligations between Debtor and Prudential, in violation of the contracts clause of the United States Constitution. [Doc. # 15].

**A.   C.R.S. § 13-54-102(1)(l)(A)**

The exemption under Colorado law provides:

> The cash surrender value of policies or certificates of life insurance to the extent of one hundred thousand dollars for writs of attachment or writs of execution issued against the insured; except that there is no exemption for increase in cash value from moneys contributed to a policy or certificate of life insurance during the forty-eight months prior to the issuance of the writ of attachment or writ of execution.

C.R.S. § 13-54-102(1)(l)(A).

The Colorado Court of Appeals addressed the different terminology used by the legislature to define the extent of the exemption ("cash surrender value") and the extent of the exclusion from the exemption ("cash value") in *Gedgaudas*. 978 P.2d at 681-82. The court

explained that when the legislature "uses different terms, it is presumed that they have different meanings; that is, 'cash surrender value' and 'cash value' are not synonymous terms." *Id*. at 680. The court "without fashioning [its] own precise definition of each," said that "'[c]ash value' is a value of the insurance contract determined in accordance with the terms of that contract . . . [that] increases incrementally with the payment of each premium and does not vary with the amount of any outstanding loans," and that "'[c]ash surrender value' is the cash value less, among perhaps other things, the amount of any outstanding loans and accrued but unpaid interest." *Id.* at 681.

Thus, any arguable ambiguity was resolved by the clarifications provided by the Colorado Court of Appeals. Further, the Bankruptcy Court correctly applied the statute and *Gedgaudas*, 978 P.2d 677 in line with the purposes the Colorado Court of Appeals enumerated in *Gedgaudas*. The statute's exclusion for money contributed to a life insurance policy during the forty-eight months prior to bankruptcy reflects a balancing of the purposes of the exemption: "to encourage individuals to insure their lives for the benefit of their families," *Gedgaudas*, 978 P.2d at 680, against "a policy of preventing abusive pre-bankruptcy planning through converting non-exempt cash into exempt cash surrender value." *In re Moosman*, 473 B.R. at 390. "The concern over the conversion of non-exempt to exempt property is especially justified in the case of life insurance because it is relatively easy to 'reconvert' the exempt cash surrender value to cash after a bankruptcy is filed." *Id.*

Here, the court of appeals' definition of "cash surrender value" in *Gedgaudas*, 978 P.2d at 681, corresponds to Prudential's term "Net Cash Surrender Value." "Cash value," as defined in *Gedgaudas*, *i.e.* the value of a life insurance policy that increases incrementally with the payment of each premium and does not vary with the amount of outstanding loans, most closely

corresponds with Prudential's term "Tabular Cash Value." As discussed above, in the forty-eight month period before the Debtor's petition date, the Policy's Tabular Cash Value or cash value (as enumerated in *Gedgaudas*) had increased $1,878.75, and the Policy's Net Cash Surrender Value (cash surrender value per *Gedgaudas*) was $1,459.79. Because the Policy's $1,878.75 cash value attributable to premiums exceeds the $1,459.79 cash surrender value of the Policy and the cash surrender value is what the Debtor may surrender the Policy for (*Gedgaudas*, 978 P.2d at 681), the Bankruptcy Court's holding that the entire cash surrender value of $1,456.79 was non-exempt was proper. The Bankruptcy Court's holding is supported by the plain language of the statute and the holding in *Gedgaudas*.

Furthermore, such an application is supported by the rationale behind the exclusion from the exemption. As the Bankruptcy Court properly explained, "the exclusion from the exemption clearly focuses only on 'increases in value' occasioned by contributions to a policy during the forty-eight month period." *Id.* Thus, the Bankruptcy Court's interpretation of the statute preserves the proper balance between an individual's right to insure their lives for the benefit of their families, and preventing the creation of what is essentially an exempt savings account by individuals contributing cash to their life insurance policies during the forth-eight month period before bankruptcy. *Id.*

Accordingly, Debtor's claims related to C.R.S. § 13-54-102(1)(l)(A) fail.

**B.     Contracts Clause**

Debtor further argues, for the first time on appeal, that the Bankruptcy Court's order and the statute improperly impair the contractual obligations between Debtor and Prudential, in violation of the contracts clause of the United States Constitution. As a general rule, "a federal

appellate court does not consider an issue not passed upon below." *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 720 (10th Cir. 1993) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). While there are exceptions to this general rule–none of which are applicable here–such power is only exercised in "the most unusual circumstances," of which this case is not. *Id.* at 721.

To the extent that Debtor argues that her contracts clause argument was sufficiently raised in the Bankruptcy Court this argument likewise fails. For an issue to be addressed on appeal it must "be presented to, considered and decided by the trial court." *Id.* (quotations omitted). "Vague, arguable references to a point in the [lower] court proceedings do not preserve the issue on appeal." *Id.* (citations and quotations omitted). Similarly, "where an issue is raised but not pursued . . . it cannot be the basis for [an] appeal." *Id.* at 722. Here, Debtor only raised the argument in her response to trustee's motion for summary judgment. In her response Debtor committed only two sentences to her argument, stating: "[t]he court is without authority to rewrite the debtor's contract with the insurer"; and "[t]o allow such to occur is unconstitutional; impairs the obligation of contract; and exposes the insurance carrier, on account uncertainty, to excessive risk." [AR Doc. # 12-2, 21]. These two sentences are not sufficient to preserve the issue for appeal. Even if the issue were to be considered sufficiently raised, it was not further pursued by Debtor. Thus, Debtor's contracts clause argument was not presented to, considered, or decided by the Bankruptcy Court, and consequently addressing it would not be proper on appeal.

Furthermore, it is not clear whether Debtor is challenging the constitutionality the Bankruptcy Court's order or of the Colorado statute. In her briefing Debtor discusses case law related to challenging the constitutionality of a state statute under the contracts clause of the United States Constitution as applied to the Bankruptcy Court's decision. To the extent she

challenges the Bankruptcy Court's decision, such a challenge is improper under the contracts clause. *See Rogers v. Tennessee*, 532 U.S. 451 (2001) (holding that the ex post facto clause is a limitation upon the powers of the legislature and does not of its own force apply to the judicial branch of government); *Marks v. U.S.*, 430 U.S. 188 (1977); *Bouie v. City of Columbia*, 378 U.S. 347 (1964) (providing that the prohibition against ex post facto laws ordinarily applies to legislative acts only, and not to judicial acts, except when there is an unforeseeable judicial enlargement of a criminal statute, applied retroactively).

To the extent Debtor is challenging the constitutionality of C.R.S. § 13-54-102(1)(l)(A), she was required to file a notice of constitutional question pursuant to Fed. R. Civ. P. 5.1(a) and Fed. R. Bankr. P. 9005.1. The Court is unaware of any such notice filed in this case. However, failure to file such a notice does not waive claims. Fed. R. Civ. P. 5.1(a). For the contracts clause to be applicable, the statute must retroactively effect an already existing contract. U.S. Const. Art. I, § 10, cl. 1. Here, the statute was in effect at the time Debtor filed her petition for bankruptcy application. *See In re Larson*, 260 B.R. 174 (Bankr. D. Colo, Mar. 12, 2001).

Accordingly, Debtor's contracts clause claim fails.

### IV.   Conclusion

For the foregoing reasons, the court concludes that the Bankruptcy Court's decision ordering Prudential to turn over to the Trustee the $1,459.79 petition date cash surrender value of Debtor's Policy was proper. Additionally, Debtor's arguments on appeal are without merit.

Accordingly, IT IS ORDERED that the Bankruptcy Court's decision granting the Trustee's summary judgment motion is AFFIRMED.

Dated:   August  20 , 2013 in Denver, Colorado.

                                      BY THE COURT:


                                        s/ Lewis T. Babcock
                                      LEWIS T. BABCOCK, JUDGE